1

2

3

4

5

6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

7

8

RICCARDO GREEN,

9

Plaintiff,

10

v.

11

SHORELINE COMMUNITY COLLEGE,

12

Defendant.

No. C06-465P

ORDER ON DEFENDANT'S
MOTION FOR SUMMARY
JUDGMENT AND PLAINTIFF'S
MOTION TO AMEND COMPLAINT

13

14

15

16

17

This matter comes before the Court on: (1) Defendant Shoreline Community College's motion
for summary judgment (Dkt. No. 24); and (2) Plaintiff Riccardo Green's motion to amend his
complaint (Dkt. No. 29).  Having considered the materials submitted by the parties and the balance of
the record, the Court ORDERS as follows:

18

(1)     Defendant's motion for summary judgment is GRANTED; and

19

(2)     Plaintiff's motion to amend his complaint is DENIED.

20

The reasons for the Court's order are set forth below.

21

**Background**

22

23

24

Plaintiff Riccardo Green, proceeding pro se and in forma pauperis, brought this action against

Shoreline Community College ("Shoreline").   Plaintiff taught beginning and continuing "Tai Chi

Chuan" courses at Shoreline through the college's Extended Learning program.  Plaintiff, who states

25

ORDER - 1

that he is part Filipino, Mongolian, Jamaican, and Native American, alleges in his complaint that he was "singled out, victimized, discriminated, harassed, retaliated, and constructively discharged on the basis of . . . race and national origin."  (Complaint ¶ 3.5).

Plaintiff began teaching tai chi courses through Shoreline's Extended Learning program in the fall of 2001.  On the evening of July 28, 2004, while Plaintiff was at a Shoreline facility in Lake Forest Park, Plaintiff asserts that he was told by Shoreline employee Angie Nickerson that he could not use computer equipment because the school was closing early.  According to materials submitted by Defendant, Plaintiff asked Ms. Nickerson whether she "has a problem with me?" and "have you ever heard of racism?"  (Bonner Decl. at 63).  On October 13, 2004, Plaintiff had another exchange that involved Ms. Nickerson and her husband.  Plaintiff maintains that he asked Ms. Nickerson for keys to a classroom while her husband was present (there is no evidence that Mr. Nickerson was a Shoreline employee).  According to Plaintiff, Ms. Nickerson's husband told Plaintiff that he had to say "please" to Ms. Nickerson.

On October 19, 2004, Plaintiff sent the following e-mail to Joanne Warner, Shoreline's Interim Vice President for Human Resources and Employee Relations,[1] regarding these two incidents:

Dear Human Resources Department:

**On July 28, 2004 @ 8:30pm** I was told by front desk clerk named Angie Nickerson in the Shoreline Community College department @ Lake Forest Park Center that I could not use the computers @ this time i.e. 8:30 pm because the Shoreline Community College department was closing early due to student attendance.  The hours I was told from your desk clerk named Angie Nickerson did match[2] to the closing time indicated for summer quarter 2004 posted on the front entrance/exit glass door.  From this reasoning, I assume that Shoreline Community College pays their employees for time not worked and instructors cannot use the computers.

**On October 13, 2004 @ 7:00pm** I approached the front counter @ the Lake Forest Park Center Shoreline Community College department and asked Angie Nickerson for the keys to the Northwest Ballet studio, so I can instruct my taichi class.  The husband of employee named Angie Nickerson, who was sitting behind the desk in the employees' workspace, rudely

---

[1]  The e-mail was also copied to a person named Ruth Clark.

[2]  Presumably, Plaintiff meant to say "did not match."

interrupted me and stated to me "you need to say please to her!". I asked him if he knew who I was, and if he had the right to say that to me. He said "so". I also indicated to him that I did not appreciate what he said to me, and requested an apology. He did not apologize to me. I proceeded to instruct my taichi class. I feel this was very rude of your employee's husband [to] interrupt me and make comments such as this. I felt embarrassed and humiliated. I am an instructor of this college and do not deserve to be treated or spoken to like this. I want this matter to be investigated immediately and dealt [with] in the most appropriate manner. I feel I have been harassed and racially profiled and discriminated because of my race.

If you would like to discuss this matter and/or you have any questions contact me via email . . . . I will not discuss matter over the phone, email, or in person unless a formal meeting is appointed with my legal advisor present . . . .

(Bonner Decl. at 74-75) (emphasis in original). Ms. Warner acknowledged receipt of Plaintiff's e-mail. Id. at 74. It appears that Ms. Warner and Plaintiff exchanged e-mails to try to arrange a meeting, but a meeting did not occur.

Plaintiff appears to have made a complaint to the Equal Employment Opportunity Commission (EEOC) in the fall of 2004 regarding these incidents. (Green Decl. at 439-45). However, for reasons that are not entirely clear, this EEOC charge was not processed and there is no evidence that Shoreline was informed of Plaintiff's 2004 EEOC complaint prior to the alleged adverse actions taken against Plaintiff by the college.

Following Plaintiff's internal complaint to Ms. Warner in October 2004, Shoreline continued to offer Plaintiff's courses in beginning and continuing tai chi. His courses were listed in the school's course catalogues for the winter, spring, and summer quarters of 2005, along with other Extended Learning courses. Some of his courses for 2005 were also listed in promotional postcards that Shoreline apparently used to promote its exercise and health classes. However, although Shoreline offered Plaintiff's courses for the winter, spring, and summer quarters of 2005, his courses for these three quarters were ultimately cancelled due to insufficient enrollment.

Defendant asserts that in order to run Plaintiff's courses, a minimum of six students had to enroll. According to Defendant, enrollment in Plaintiff's classes were as follows from 2001 and 2005, with "N/A" apparently meaning that a course was not offered in a particular quarter:

| | Beginning Tai Chi | Comment | Tai Chi Continued | Comment |
|---|---|---|---|---|
| **2001** | | | | |
| Fall | 14 | | N/A | |
| | | | | |
| **2002** | | | | |
| Winter | 16 | | N/A | |
| Spring | 20 | | N/A | |
| Summer | 18 | | N/A | |
| Fall | 24 | | 9 | |
| | | | | |
| **2003** | | | | |
| Winter | 18 | | 11 | |
| Spring | 12 | | 10 | |
| Summer | 14 | | 9 | |
| Fall | 19 | | 1 | cancelled |
| | | | | |
| **2004** | | | | |
| Winter | 11 | | 3 | cancelled |
| Spring | 10 | | N/A | |
| Summer | 10 | | N/A | |
| Fall | 8 | | 3 | mistakenly ran class at a loss |
| **2005** | | | | |
| Winter | 3 | cancelled | 0 | cancelled |
| Spring | 0 | cancelled | 0 | cancelled |
| Summer | 2 | cancelled | 0 | cancelled |

(Bonner Decl. at 28).

On May 10, 2005, Barbara Gleisner, a Caucasian female, was hired by Defendant to teach a tai chi course for the 2005 fall quarter. Id. at 27. According to Defendant, Ms. Gleisner had submitted a proposal to teach a course on "Tai Chi: Kuang Ping Yang Style and Qi Gong." Id. at 20. Defendant maintains that it decided to offer the new tai chi class for several reasons. Defendant states that marketing research showed that tai chi courses were running well at other extended learning programs in Washington community colleges and that Shoreline's program development team believed that tai chi as a topic had enough potential to merit a new course attempt despite declining enrollments in Plaintiff's tai chi courses. Id. Defendant states that it decided to offer a "new tai chi" class with the following changes: (1) new type of tai chi; (2) new instructor and curriculum; (3) new title and description to match the instructor's curriculum; (4) new location; and (5) new price. Id. Defendant

ORDER - 4

1    states that other factors were considered, including: (1) Ms. Gleisner would teach the course for 40%

2    of gross revenues, compared to 60% for Mr. Green; (2) the instructor had submitted a "compelling,

3    student focused curriculum"; and (3) Ms. Gleisner was clearly qualified, had followed the standard

4    new course proposal process, interviewed well, and "gave an outstanding demonstration lesson." Id.

5    at 21.

6        On May 11, 2005, Plaintiff was informed in an e-mail from John Bonner, Shoreline's Assistant

7    Director of Extended Learning, that the college would not offer his tai chi chuan courses for the Fall

8    Quarter 2005.  In his e-mail, Mr. Bonner stated:

9        As you know, your Tai Chi Chuan courses haven't had enough students to run Winter or
         Spring quarters.  Because your classes haven't had sufficient enrollments, we have decided not
10       to offer either of them at SCC for **Fall Quarter, 2005**.

11       Of course, we are still **committed to you for Summer Quarter which is already arranged!**
         We just wanted to you [sic] plenty of notice in advance so you will have enough time to make
12       other plans for the Fall.

13   Id. at 55 (emphasis in original).

14       In July 2005, Plaintiff sent an e-mail to Mr. Bonner in which Plaintiff indicated that he would

15   like to offer a different class for Fall 2005 at Shoreline.  Id. at 123.  In reply, Mr. Bonner directed Mr.

16   Green to submit Shoreline's "standard new course proposal form," which would be shared with the

17   development team.  Id. at 124.  Mr. Bonner attached the proposal form and indicated that a proposal

18   would be considered for the Winter Quarter because "Fall is done already."  Id.

19       Ms. Gleisner taught her tai chi class in the Fall Quarter 2005, with eight students enrolled.  In

20   September 2005, Mr. Green sent an e-mail to Mr. Bonner asking "why I was replaced with another

21   taichi instructor."  Id. at 125.  In reply, Mr. Bonner stated:

22       You were not replaced.  This is a different type of Tai Chi – Kuang Ping Yang style.  We
         developed this course to see if we will have better luck with this style.  Tai Chi *seems* to be
23       popular but we never could get adequate enrollments for your Tai Chi courses.

24   Id. (emphasis in original).  Mr. Bonner also noted that he had not received a new course proposal from

25   Plaintiff.  Id.  In response, Plaintiff indicated that he would like to offer a tai chi class in winter, spring,

1    and summer 2006.  Id. at 127.  Mr. Bonner directed Plaintiff to fill out a new course proposal form

2    and send it in for review.  Id.  Mr. Bonner noted that "[w]e obviously are not interested in offering the

3    same course you have taught before as that did not garner adequate enrollments in the last year," but

4    that he "would be happy to share any new ideas you have with the development team for their

5    review." Id.

6         Plaintiff again contacted Mr. Bonner on December 18, 2005 to express interest in offering a

7    class for the spring, summer, and fall quarters of 2006.  Id. at 129.  On December 21, 2005, Mr.

8    Bonner replied that Plaintiff should feel free to submit proposals at any time and could find

9    instructions and forms on the web as he had explained before.  Id. at 130.

10        On December 23, 2005, Plaintiff submitted a charge of discrimination against Defendant to the

11   EEOC.  In his charge, Plaintiff stated as follows:

12        I had been employed with Shoreline Community College since September 2001 as a Tai Chi
         Instructor.  My Tai Chi class was cancelled in the Winter Quarter, Spring Quarter, and
13        Summer Quarter.  I was then told that I was no longer needed to teach the Fall Quarter which
         began in September 2005.  I was replaced by a female Caucasian.
14
         I believe I have been discriminated against because of my sex, race, national origin, and in
15        retaliation, in violation of Title VII of the Civil Rights Act of 1964, as amended.

16   Id. at 9.

17        Defendant received a Notice of Charge of Discrimination from the EEOC, to which it

18   responded.  The EEOC mailed a right to sue letter to Plaintiff on February 7, 2006.  (Green Decl. at

19   186).  The letter indicated that Plaintiff had the right to file a lawsuit against Defendant under federal

20   law within 90 days of receiving the notice.  Id.

21        Plaintiff submitted his complaint in this Court on April 3, 2006, along with an application to

22   proceed in forma pauperis (IFP).  His IFP application was approved on April 11, 2006 and his

23   complaint was filed that same day.  Plaintiff's complaint raises the following claims:  (1) retaliation; (2)

24   disparate treatment; (3) disparate impact; (4) harassment; and (5) constructive discharge; and (6)

25   breach of contract.

ORDER - 6

After Defendant filed the pending motion for summary judgment, Plaintiff filed a motion to amend his complaint. His initial motion to amend did not include a copy of his proposed amended complaint, nor did it describe in any comprehensible manner what particular amendments Plaintiff wished to make. However, Plaintiff subsequently filed an "amended" motion to amend and included a copy of a proposed amended complaint.

Plaintiff has filed a number of other discrimination lawsuits in this Court, including a case against North Seattle Community College filed in 2005.[3] See Green v. North Seattle Community College, C05-129TSZ. The 2005 North Seattle Community College case also raised claims for discrimination arising from Plaintiff's work as a continuing education instructor. Defendant notes that in a deposition taken on February 6, 2006 in that case, Plaintiff was asked if he was currently an instructor for any community college. Plaintiff stated that was not and that "Shoreline, I stopped teaching there just due to transportation." (Rocke Decl., Ex. 2 at 30:18-23). However, Plaintiff now asserts that he made this statement in error. (Opp. at 10) (stating "Plaintiff made a human error indicating that Shoreline Community College classes were cancelled due to transportation").

## Analysis

A.    Defendant's Motion for Summary Judgment

Defendant has moved for summary judgment under Federal Rule of Civil Procedure 56. Rule 56(c) provides, in part, that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of

---

[3] In the past two years, Plaintiff has filed nine complaints in this Court: Green v. Northwest Hospital, C04-2320JCC; Green v. North Seattle Community College, C05-129TSZ; Green v. University of Washington, C06-464MJP; Green v. Shoreline Community College, C06-465MJP; Green v. University of Washington Temporary Staff Company, C06-466MJP; Green v. Westin Hotel, C06-467MJP; Green v. North Seattle Community College, C06-1230JCC; Green v. Fairmont Olympic Hotel, C06-1231RSL; and Green v. North Seattle Community College, C06-1456JCC.

law." Once the moving party has filed a motion for summary judgment, it is the non-moving party's burden to provide sufficient evidence such that a reasonable jury could decide in their favor. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 252 (1986). "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial.'" <u>Id.</u> at 248.

If there is a genuine issue of material fact, it is not necessary for the non-moving party to provide evidence that shows that the disputed facts can be resolved conclusively in their favor. <u>Id.</u> at 248-49. Rather, the non-moving party must only show that "there is sufficient evidence supporting the claimed factual dispute to be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." <u>Id.</u> at 249. All "justifiable inferences" are to be drawn in the non-moving party's favor. <u>Id.</u> at 255. However, "[t]he mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." <u>Id.</u> at 252. Because Plaintiff is proceeding pro se, his pleadings must be construed liberally. <u>Eldridge v. Block</u>, 832 F.2d 1132, 1137 (9th Cir. 1987).

1.   Timeliness in Filing Complaint

Defendant first argues that Plaintiff's claims under Title VII of the Civil Rights Act of 1964 are barred because he supposedly waited more than 90 days after receiving his right to sue letter from the EEOC to commence this lawsuit. Defendant contends that Plaintiff "filed suit on May 25, 2006," more than 90 days after the right to sue letter was issued on February 7, 2006. (Opening Brief at 8.)

Defendant's assertion that Plaintiff "filed suit on May 25, 2006" is inaccurate. Plaintiff lodged his complaint in this Court on April 3, 2006 and the complaint was filed on April 11, 2006, the date that his in forma pauperis application was approved. Indeed, Defendant itself observes in a footnote in its brief that Plaintiff's complaint was filed on April 11, 2006. (Opening Brief at 9 n.3.) As a result, Plaintiff's complaint was clearly filed in this Court less than 90 days after the EEOC issued its right to sue letter on February 7, 2006.

2.     Insufficient Service of Process

In three lines at the close of its summary judgment motion, Defendant argues as follows:

The district court should dismiss the case (without prejudice) because the College was never given service of process.  A state government must be properly served with the summons and complaint according to the strictures of the Federal Rules.

(Opening Brief at 17).  However, Defendant cites no evidence to support this contention and the Court cannot grant summary judgment on this basis without supporting evidence.

3.     Retaliation Claim

It appears that Plaintiff claims that Shoreline cancelled and then discontinued his tai chi courses in retaliation for Plaintiff's internal complaint in October 2004 of actions that he perceived as racial harassment and discrimination by Ms. Nickerson and her husband.  Plaintiff's retaliation claim appears to be brought under Title VII of the Civil Rights Act of 1964 and is analyzed under the burden-shifting mechanism set out in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973).  First, Plaintiff must make a prima facie case of retaliation by demonstrating that: (1) he engaged in a protected activity; (2) he suffered an adverse employment action; and (3) there was a causal link between the protected activity and the adverse action.  Stegall v. Citadel Broad. Co., 350 F.3d 1061, 1065-66 (9th Cir. 2003).  If Plaintiff makes a prima facie case, the burden shifts to Defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action.  Id. at 1066.  If Defendant articulates such a reason, Plaintiff bears the burden of demonstrating that the reason was merely a pretext for a discriminatory motive.  Id.

a.     Prima Facie Case

Defendant argues that Plaintiff cannot make a prima facie retaliation case because he did not engage in "protected activity" under Title VII when he complained about the incidents involving Ms. Nickerson and her husband.  Title VII includes an anti-retaliation provision that provides:

It shall be an unlawful unemployment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice

1    by this subchapter, or because he has made a charge, testified, assisted, or participated in any
     manner in an investigation, proceeding, or hearing under this subchapter.
2

3    42 U.S.C. § 2000e-3(a).  This provision contains both an "opposition clause" (i.e., protection for

     opposing violations of Title VII) and a "participation clause" (i.e., protection for participating in
4

5    investigation, proceeding, or hearing under Title VII).

                                    i.    Opposition Clause
6

7         The "opposition clause" protects an employee from retaliation for opposing "what they

     reasonably perceive as discrimination *under the Act*."  Learned v. City of Bellevue, 860 F.2d 928, 932
8

9    (9th Cir. 1988) (emphasis in original).  Under Ninth Circuit law, the employment practice opposed by

     the employee must not actually be unlawful; instead, opposition clause protection will apply
10

11   "whenever the opposition is based on a 'reasonable belief' that the employer has engaged in an

     unlawful employment practice."  EEOC v. Crown Zellerbach Corp., 720 F.2d 1008, 1013 (9th Cir.
12

13   1983).  The Ninth Circuit described the "reasonable belief" requirement in Moyo v. Gomez, 40 F.3d

     982 (9th Cir. 1994), where it stated:
14

15        Moyo [the plaintiff] would be able to state a retaliation claim if he could show that his belief
          that an unlawful employment practice occurred was "reasonable. . . . The reasonableness of
16        Moyo's belief that an unlawful employment practice occurred must be assessed according to an
          objective standard – one that makes due allowance, moreover, for the limited knowledge
17        possessed by most Title VII plaintiffs about the factual and legal bases of their claims. . . . We
          also note that it has been long established that Title VII, as remedial legislation, is construed
18        broadly.  This directive applies to the reasonableness of a plaintiff's belief that a violation
          occurred.
19   Id. at 985.

20        Applying the Ninth Circuit's standard, the Supreme Court has held that opposing perceived

21   discrimination or harassment is not sufficient to invoke the anti-retaliation protections of Title VII

22   when "no one could reasonably believe" that the conduct complained of violated Title VII.  Clark

23   County Sch. Dist. v. Breeden, 532 U.S. 268, 270 (2001).  In Breeden, the plaintiff alleged that she had

24   been retaliated against after she complained about comments made by her male co-workers that the

25   plaintiff apparently regarded as sexually harassing.  The Court overturned the Ninth Circuit's holding

ORDER - 10

1    that the plaintiff could have reasonably believed that her co-workers' comments constituted a violation

2    of Title VII.

3         In this case, Plaintiff sent an e-mail in October 2004 to Ms. Warner that complained about two

4    incidents that had occurred in July and October 2004.  Specifically, Plaintiff complained:  (1) on July

5    28, 2004, Shoreline employee Ms. Nickerson told Plaintiff that he could not use computer equipment

6    at 8:30 p.m. because the school was closing early; and (2) on October 13, 2004, Ms. Nickerson's

7    husband "rudely" said that Plaintiff "need[ed] to say please" when Plaintiff asked Ms. Nickerson for

8    keys.  Plaintiff stated that "I feel I have been harassed and racially profiled and discriminated because

9    of my race."

10        Plaintiff may have subjectively perceived these two incidents as constituting harassment or

11   discrimination based on his race.  However, under an objective standard, the Court finds that no

12   reasonable person could believe that these two incidents constituted violations of Title VII by

13   Shoreline, even making due allowance for the limited knowledge possessed by most Title VII plaintiffs

14   about the factual and legal bases of their claims.  Neither incident involved any explicitly racial

15   comments, nor is any implicit racial animus apparent.  With respect to the July 28, 2004 incident,

16   Plaintiff has offered no evidence that a similarly-situated instructor – Caucasian or otherwise – was

17   allowed to use computer equipment after Plaintiff was told that he could not use a computer because

18   the school was closing early.  The October 2004 incident involved a comment made by Ms.

19   Nickerson's husband, who does not even appear to be a Shoreline employee.  In any case, Mr.

20   Nickerson's alleged comment – i.e., that Plaintiff needed to say "please" when asking Ms. Nickerson

21   for keys – cannot reasonably be regarded as a racially harassing comment or discrimination based on

22   race.  As a result, the Court finds that no reasonable person could believe that these two isolated

23   incidents violated Title VII.

24        Plaintiff does not automatically engage in "protected activity" under Title VII every time he

25   makes an internal complaint to an employer.  To be sure, the Ninth Circuit has stated that "[m]aking

an informal complaint to a supervisor is . . . a protected activity" under 42 U.S.C. § 2000e-3(a).  Ray

v. Henderson, 217 F.3d 1234, 1240 n.3 (9th Cir. 2000).   However, this statement by the Ninth Circuit

was not made in a case involving an internal complaint about conduct that could not reasonably be

perceived as discrimination under Title VII and must be read in tandem with the Supreme Court's

decision in Breeden and the Ninth Circuit's decision in Learned.   For example, the plaintiff in

Breeden, like Plaintiff in this case, had made internal complaints.   Nonetheless, the Supreme Court

held that the plaintiff in Breeden could not invoke the protections of 42 U.S.C. § 2000e-3(a) because

no one could have reasonably believed that the conduct she complained about violated Title VII.  The

same logic would apply here.

The Court recognizes that the EEOC staff member who investigated Plaintiff's December 2005

charge sent Plaintiff a letter on February 6, 2006 that stated as follows:

> [Y]ou asked why the charge (380-2005-00257) was not formalized and served to Shoreline
> Community College and if EEOC protected or created a legal defense for Shoreline
> Community College.  Our computer records for 380-2005-00257 show that you were
> scheduled for an intake interview on December 15, 2004.  There is no further entry to show
> whether you signed a charge form and returned it to us.  The computer record shows that the
> 380-2005-00257 inquiry was closed as a failure to pursue the inquiry.
>
> Although the inquiry was not formalized or served, you were still protected under retaliation
> because you had filed an internal complaint regarding discrimination.  Therefore, this did not
> preclude EEOC from investigating your retaliation allegation nor does it preclude you from
> filing a lawsuit in federal court regarding the retaliation issue.

(Green Decl. at 185).  However, this Court is not bound by the EEOC staff member's statement that

Plaintiff was "still protected under retaliation because you had filed an internal complaint regarding

discrimination."   The EEOC staff member's broad statement is not consistent with the Supreme

Court's decision in Breeden or the Ninth Circuit's holding in Learned because it does not recognize

that a complaining employee must have a reasonable belief that a Title VII violation had occurred.

Indeed, if the EEOC staff member's statement were correct, the Supreme Court's decision in Breeden

would be untenable, since the plaintiff in that case had also made internal complaints.  See also Daly v.

Cazier Enters., Inc., 2006 WL 3230297 at *5 (E.D. Wash. Nov. 6, 2006) (noting that while "[m]aking

1    an informal complaint to a supervisor can also constitute a protected activity under Title VII," "not

2    every complaint made to a superior implicates Title VII").

3                    ii.      Participation Clause

4          The "participation clause" protects employees "who utilize the tools provided by Congress to

5    protect their rights" under Title VII.  Learned, 860 F.2d at 932.  An employee's participation in the

6    EEOC process is protected activity under this clause.  See Abramson v. Univ. of Hawaii, 594 F.2d

7    202, 211 (9th Cir. 1979).  Here, it appears that Plaintiff made a complaint to the EEOC in the fall of

8    2004 regarding the July and October 2004 incidents involving Ms. Nickerson and her husband.

9    However, this EEOC complaint was not processed and there is no evidence that Defendant received

10   notice of this charge before Plaintiff's courses were cancelled and discontinued.  As a result, even if

11   making the EEOC complaint in the fall of 2004 constituted protected activity under the participation

12   clause, Plaintiff cannot show a causal link between his 2004 EEOC complaint and the

13   cancellation/discontinuation of his courses because the employer was not aware of the EEOC charge.

14                    b.      Pretext

15         Even if Plaintiff had made a prima facie case of retaliation, Defendant argues: (1) it had

16   legitimate, non-discriminatory reasons for cancelling and discontinuing Plaintiff's tai chi courses; and

17   (2) Plaintiff has not offered specific and substantial evidence that Defendant's reasons are pretextual.

18          Defendant states that Plaintiff's tai chi courses were cancelled in the winter, spring, and

19   summer quarters of 2005 and then discontinued in the fall quarter of 2005 due to insufficient

20   enrollment.  Defendant asserts that it accepted a course proposal by a different tai chi instructor

21   because marketing research indicated that tai chi classes were running well at other Washington

22   community colleges, despite the failure of Plaintiff's courses to attract sufficient enrollment.

23   Defendant states that it believed that a new instructor with a new curriculum and tai chi style might

24   attract greater student interest.  Defendant also maintains that it frequently and routinely discontinues

25   classes that fail to attract sufficient enrollment for more than one quarter.  Defendant also notes that

ORDER - 13

1   the new instructor agreed to teach the course for 40% of gross revenues, compared to the 60% of

2   gross revenues paid to Plaintiff.  In addition, Defendant notes that after Plaintiff was informed that his

3   tai chi courses were being discontinued, Plaintiff was repeatedly told that he could submit a new

4   course proposal, but Plaintiff failed to do so.

5        These reasons are sufficient to discharge Defendant's burden of articulating a legitimate, non-

6   discriminatory reason for cancelling and discontinuing Plaintiff's courses.  The burden then shifts to

7   Plaintiff to demonstrate that Defendant's reasons are a pretext for retaliation.  Stegall, 350 F.3d at

8   1068.  Although Plaintiff has not offered direct evidence of pretext, he can use circumstantial

9   evidence to show that the employer's proferred explanation is unworthy of credence.  Coghlan v.

10  American Seafoods Co., 413 F.3d 1090, 1095 (9th Cir. 2005).  However, "when the plaintiff relies on

11  circumstantial evidence, that evidence must be 'specific and substantial' to defeat the employer's

12  motion for summary judgment."  Id.

13       Plaintiff's brief in response to Defendant's motion is not well-organized and is somewhat

14  difficult to comprehend.  However, it appears that Plaintiff's basic and repeated point is that if his tai

15  chi courses were discontinued due to lack of enrollment, it makes no sense why Defendant would offer

16  a different tai chi course with another instructor.  However, Plaintiff does not offer specific and

17  substantial evidence to dispute Defendant's contentions that enrollment in his courses had declined,

18  nor does he dispute Defendant's contention that it had a policy of discontinuing low-enrollment

19  classes.  Plaintiff also does not dispute that he was told he could submit new course proposals, nor

20  does he point to any new course proposals that he submitted after the summer quarter of 2005.

21  Plaintiff also does not offer specific or substantial evidence that casts doubt on Defendant's contention

22  that marketing research showed that tai chi classes were performing well at other Washington

23  community colleges, despite the declining enrollment in Plaintiff's courses.

24       In addition, Plaintiff has not submitted specific and substantial evidence that Defendant is being

25  untruthful in asserting that enrollment in Plaintiff's tai chi courses declined.  As Defendant notes,

ORDER - 14

enrollment in Plaintiff's tai chi courses had started to decline well before Plaintiff made his October 2004 complaint to Ms. Warner.  Indeed, his continuing tai chi course had been cancelled at least twice due to insufficient enrollment before Plaintiff made his October 2004 complaint.  Plaintiff's beginning tai chi course had strong enrollment in 2001 through 2003; however, after 19 students enrolled in the course in the fall quarter of 2003, enrollment dropped considerably. Defendant also notes that in December 2004, Plaintiff raised the price of his courses from $69 to $99, a factor that would likely contribute to declining enrollment in his classes.[4]

The record also indicates that for several years, enrollment in Plaintiff's beginning tai chi classes had dropped sharply between the fall and winter quarters.  For example, enrollment from the fall 2002 quarter to the winter 2003 quarter dropped from 24 students to 18 students, enrollment from the fall 2003 quarter to the winter 2004 quarter dropped from 19 students to 11 students, and enrollment from the fall 2004 quarter to the winter 2005 quarter dropped from 8 students to 3 students.  (Bonner Decl. at 28).  As a result, the decline in enrollment in Plaintiff's beginning tai chi class from the fall 2004 quarter to the winter 2005 quarter was consistent with declines in enrollment that had occurred in the two previous years for this class between the fall and winter quarters.

Therefore, even if Plaintiff had made a prima facie case of retaliation, his claim would be subject to dismissal because he has not offered specific and substantial evidence to show that Defendant's reasons for cancelling and discontinuing his courses are pretextual.

4.    Disparate Impact Claim

In his complaint, Plaintiff labels his second cause of action "disparate treatment and impact." Although Plaintiff uses the term "disparate impact" in his complaint and briefing, it does not appear that Plaintiff fully comprehends the basis for a disparate impact claim, the method of proving such a

---

[4] Based on course catalogues, it appears that the price of Plaintiff's tai chi course for the winter quarter of 2005 remained at $69 and that the price was increased to $99 starting in the spring quarter of 2005.  (Bonner Decl. at 99-100, 102).

claim, or the distinction between a "disparate treatment" and a "disparate impact" claim under Title VII.

"A disparate impact claim challenges 'employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group then another and cannot be justified by business necessity.'" Pottenger v. Potlatch Corp., 329 F.3d 740, 749 (9th Cir. 2003). "To establish a prima facie case of disparate impact under Title VII, the plaintiffs must: (1) show a significant disparate impact on a protected class or group; (2) identify the specific employment practices or selection criteria at issue; and (3) show a causal relationship between the challenged practices or criteria and the disparate impact." Hemmings v. Tidyman's Inc., 285 F.3d 1174, 1190 (9th Cir. 2002). To prove a disparate impact claim, "[s]tatistical evidence is used to demonstrate how a particular employment practice causes a protected minority group to be under represented in a specific area of employment (for example, hiring or promotion)." Paige v. California, 291 F.3d 1141, 1145 (9th Cir. 2002).

As Defendant notes, Plaintiff has not offered evidence suggesting that Shoreline has a facially neutral employment practice that causes a significant disparate impact on any protected class or group to which Plaintiff belongs. Plaintiff also has not offered statistical evidence showing that a protected class or group to which he belongs is under represented in hiring, promotions, or other areas of employment at Shoreline. As a result, Plaintiff has not provided sufficient evidence to maintain a disparate impact claim. To the extent that Plaintiff is maintaining that Defendant treated him less favorably than similarly-situated individuals because of his race, national origin, or sex, such a claim would be for disparate treatment (discussed below), rather than for disparate impact.

Therefore, Plaintiff's claims for disparate impact under Title VII will be dismissed.

5.    Disparate Treatment Claim

Plaintiff's complaint alleges that he was subject to disparate treatment based on his race and national origin. A disparate treatment claim is analyzed under the same type of burden-shifting

1   framework that applies to a retaliation claim.  A plaintiff who is terminated or demoted may establish a

2   prima facie case of disparate treatment under Title VII by showing: (1) he belongs to a protected class,

3   (2) he was qualified for the position he held, (3) he was terminated or demoted from that position, and

4   (4) the job went to someone outside the protected class.  Coghlan v. American Seafoods Co. LLC,

5   413 F.3d 1090, 1094 (9th Cir. 2005).  The burden then shifts to the Defendant to present evidence

6   sufficient to permit the factfinder to conclude that the employer had a legitimate, nondiscriminatory

7   reason for the adverse employment action.  Id.  If the employer meets that burden, the burden shifts to

8   the plaintiff to show that the employer's explanations were actually a pretext for discrimination.  Id.

9          To the extent that Plaintiff intends to claim that he was subjected to disparate treatment

10  discrimination when he was denied access to computer equipment by Ms. Nickerson on July 28, 2004,

11  such a claim would not be tenable under Title VII.[5]  Plaintiff has not offered any evidence that a

12  similarly-situated Caucasian instructor was granted access to the computer equipment after Plaintiff

13  was denied access that evening.  However, it appears that Plaintiff's disparate treatment claim may

14  also be based on allegations that he was replaced as a tai chi instructor by a Caucasian female.

15                     a.    Prima Facie Case

16         Plaintiff has offered sufficient evidence to present a prima facie case of disparate treatment

17  regarding Defendant's decision to discontinue his status as a tai chi instructor.  There is no dispute that

18  Plaintiff belongs to a protected class.  Second, there is no serious dispute that he was qualified for his

19  position as a tai chi instructor; Defendant has offered no evidence of complaints about Plaintiff's job

20  performance or failure to perform any job-related duties.  Third, Plaintiff was effectively terminated

21  from his position as a Shoreline tai chi instructor when Defendant discontinued his tai chi courses.

22

23  _____

24       [5]  The Court regards Plaintiff's complaint about the incident from October 2004 involving Ms.
     Nickerson and her husband as a complaint of racial harassment, rather than a disparate treatment
25   claim.

ORDER - 17

1    Fourth, a Caucasian female taught tai chi courses at Shoreline after Plaintiff's courses were

2    discontinued.

3            b.    Pretext

4            Although Plaintiff has offered sufficient evidence to make a prima facie case of disparate

5    treatment discrimination, he fails to offer specific and substantial evidence that Defendant's articulated

6    reasons for cancelling and discontinuing his tai chi courses are a pretext for discrimination.  As noted

7    above in the analysis of Plaintiff's retaliation claims, Defendant has offered multiple reasons why

8    Plaintiff's tai chi courses were cancelled and discontinued due to insufficient enrollment and why

9    Defendant chose to offer a new course with a new instructor.  For the same reasons discussed earlier

10   in the analysis of Plaintiff's retaliation claims, the Court finds that Plaintiff has not offered sufficient

11   evidence to suggest that Defendant's reasons for discontinuing his tai chi courses were a pretext for

12   discrimination.  Therefore, Plaintiff's disparate treatment claims will be dismissed.

13           6.    Harassment Claims

14           Plaintiff also alleges that he was subjected to racial harassment and a hostile work

15   environment.  To prevail on a hostile workplace claim premised on race, Plaintiff must show: (1) that

16   he was subjected to verbal or physical conduct of a racial nature; (2) that the conduct was unwelcome;

17   and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of the plaintiff's

18   employment and create an abusive environment.  Vasquez v. County of Los Angeles, 349 F.3d 634,

19   642 (9th Cir. 2003).  To determine whether conduct is sufficiently severe or pervasive to violate Title

20   VII, the Court must consider "all the circumstances, including the frequency of the discriminatory

21   conduct, its severity; whether it is physically threatening or humiliating, or a mere offensive utterance;

22   and whether it unreasonably interferes with an employee's work performance."  Id.  It should be also

23   noted that an employer may only be held liable for racial harassment by a co-worker if the employer is

24   negligent.  "If . . . the harasser is merely a co-worker, the plaintiff must prove that the employer was

25   negligent, i.e. that the employer knew or should have known of the harassment but did not take

1   adequate steps to address it." <u>Swinton v. Potomac Corp.</u>, 270 F.3d 794, 803 (9th Cir. 2001).

2   Here, Plaintiff states that he was subjected to a hostile work environment by Angie Nickerson,

3   contending that he was "harassed continually by staff member Angie Nickerson on multiple occasions

4   in July 2004 and October 2004." (Opp. at 18)  However, as Defendant notes, the only specific

5   incidents described by Plaintiff regarding Ms. Nickerson (or her husband) were the two events in July

6   and October 2004.  These are isolated events involving a co-worker and her husband.   Although

7   Plaintiff may have perceived these incidents as insulting, neither of these incidents involved verbal or

8   physical conduct of an explicitly racial nature.  Under the facts alleged by Plaintiff, a reasonable finder

9   of fact could not conclude that these isolated incidents were sufficiently severe or pervasive as to

10   constitute a hostile work environment based on race or national origin.

11         In his opposition brief, Plaintiff also appears to suggest that he experienced racial harassment

12   at Shoreline because on Martin Luther King Day in 2004 and/or 2005, signs were allegedly posted on

13   two front doors of the college indicating one was for blacks and one was for Caucasians.  (Opp. at 15-

14   16).  Putting aside the fact that Plaintiff provides no evidence that he complained about these incidents

15   to Defendant before his employment ended, these incidents cannot be seriously regarded as racial

16   harassment.  The posting of such signs on Martin Luther King Day would obviously appear to be

17   designed to remind students of the segregationist practices fought by Dr. King.  There is no legitimate

18   suggestion that the college actually adopted a policy of requiring Caucasians and African-Americans to

19   use separate doors.

20         Plaintiff also suggests that Mr. Bonner made "an intentional offensive racial slur, inference, and

21   association" to Plaintiff on September 14, 2005.  (Opp. at 8).  To support this contention, Plaintiff

22   points to an e-mail in which Mr. Bonner stated "if we have a 'Spanish Conversation' class that is

23   struggling, we may eventually cancel it and offer a 'Spanish for Medical Professionals' class instead."

24   (Green Decl. at 370).  Plaintiff's assertion that this communication somehow constitutes an "offensive

25   racial slur, inference and association" is entirely without merit.

ORDER - 19

1    Therefore, Plaintiff's claims for a hostile work environment based on racial or national origin

2    harassment will be dismissed.

3        7.    Breach of Contract and Constructive Discharge Claims

4        Plaintiff's complaint includes both a breach of contract claim and a "constructive discharge"

5    claim. Both of these causes of action may be brought under Washington state law.[6]  As a result,

6    Defendant argues that the Eleventh Amendment to the United States Constitution bars Plaintiff from

7    bringing these state-law claims in federal court.

8        "Generally, the Eleventh Amendment shields state governments from money judgments in

9    federal courts," although Congress can abrogate this immunity by expressing its intent to do so with

10   sufficient clarity.  Taylor v. Westly, 402 F.3d 924, 929-30 (9th Cir. 2005).  As a state college,

11   Defendant is an arm of the state and is entitled to invoke the protections of the Eleventh Amendment.

12       As Plaintiff notes, Congress has abrogated the Eleventh Amendment with respect to Title VII

13   claims.  See Cerrato v. San Francisco Cmty. Coll. Dist., 26 F.3d 968, 976 (9th Cir. 1994).  However,

14   Plaintiff has offered no evidence that the Eleventh Amendment has been abrogated with respect to

15   breach of contract or constructive discharge claims under Washington state law.  As a result, these

16   claims must be dismissed under the Eleventh Amendment.[7]  Dismissal of claims under the Eleventh

17   Amendment are without prejudice to refiling such claims in a court of competent jurisdiction.

18   Freeman v. Oakland Unified Sch. Dist., 179 F.3d 846, 847 (9th Cir. 1999).

19

20

21

22       [6] To the extent that Plaintiff may intend to maintain a constructive discharge claim under Title
     VII due to retaliation, racial harassment, or disparate treatment, such a claim would be untenable for
23   the reasons discussed earlier in the analysis of Plaintiff's other Title VII claims.

24       [7] Defendant also correctly notes that to the extent Plaintiff may intend to maintain a claim
     under 42 U.S.C. § 1981, such a claim would also be barred by the Eleventh Amendment.  See Mitchell
25   v. Los Angeles Cmty. Coll., 861 F.2d 198, 201 (9th Cir. 1989).

8.    Request to Strike Plaintiff's Evidence

In his opposition to Defendant's summary judgment motion, Plaintiff submitted a declaration and over 460 pages of documents.  Defendant has requested that the Court strike Plaintiff's declaration and exhibits, arguing that Plaintiff's exhibits are not properly authenticated, contain "suspicious redactions," and sometimes do not include all pages of e-mail exchanges.  The Court denies Defendant's request to strike as moot.  Even if all of Plaintiff's documents are considered, summary judgment would still be appropriate on all claims asserted in Plaintiff's complaint.

B.    Plaintiff's Motion to Amend Complaint

Plaintiff's original six-page complaint was filed on April 11, 2006 and named Shoreline Community College as the only defendant.  Shoreline filed its answer to the complaint on June 19, 2006.  On June 22, 2006, however, Plaintiff submitted an "amended complaint," which made relatively minor changes to the complaint.  In its summary judgment motion, Defendant correctly notes that this amended complaint was improperly filed without leave of Court, since it was submitted after Defendant had answered the complaint.  See Fed. R. Civ. P. 15(a) (requiring leave of Court to amend a complaint after a defendant has filed an answer to the original complaint).

After Defendant raised this point in its summary judgment motion, Plaintiff filed a motion to amend his complaint pursuant to Rule 15(a).  (Dkt. No. 29).  This skeletal 2-page motion, which was titled "Motion to Amend Complaint Lawsuit," stated:

> Plaintiff inadvertently failed to include defendant individual names on the complaint and designate Shoreline Community College as Shoreline Community College, Et. Al., since this is a state agency doing business in Washington State.  Plaintiff request seeks [sic] . . . leave to amend complaint to include named individuals on/in complaint and designate title all pleadings with Shoreline Community College Et. Al.

(Dkt. No. 29 at 1).  Plaintiff did not submit a proposed amended complaint with this initial motion to amend.  Based on the language above, it appears that Plaintiff was seeking leave to add defendants to his complaint.  However, Plaintiff did not identify the additional defendants, nor had these individuals

ORDER - 21

1   been named in the improperly-filed amended complaint that Plaintiff had submitted on June 22, 2006

2   without leave of Court.

3        Defendant filed an opposition to Plaintiff's motion to amend, arguing that the motion should be

4   denied because it lacked the particularity required by Federal Rule of Civil Procedure 7(b), Plaintiff

5   had failed to file a copy of the proposed amended complaint, and any amendments would be futile.

6        The same day that Defendant filed its opposition to Plaintiff's motion to amend, Plaintiff filed a

7   pleading titled "(Amended) Motion to Amend Complaint Lawsuit."  (Dkt. No. 32).  The "amended"

8   motion to amend added the following sentence: "Plaintiff requests and seeks to amend claims and

9   allegations in complaint, but related and associated to original claims and allegations in complaint."

10   Id. at 1.  Plaintiff also included with the "amended" motion a 20-page proposed amended complaint,

11   which names six additional individual defendants and makes a number of new allegations.  (Dkt. No.

12   32-3.  Defendant did not file a response to the "amended" motion.

13        The Federal Rules of Civil Procedure provide that leave to amend a complaint should be freely

14   granted when justice so requires.  M/V American Queen v. San Diego Marine Constr. Corp., 708 F.2d

15   1483, 1492 (9th Cir. 1983).  However, courts have also observed that "[i]t is generally inappropriate

16   to grant leave to amend a complaint while summary judgment is pending."  Coplin v. Conejo Valley

17   Unified Sch. Dist., 903 F. Supp. 1377, 1388 (E.D. Cal. 1995).

18        Here, Plaintiff's original motion to amend was nearly incomprehensible, failed to name the

19   additional defendants that Plaintiff wished to sue, and did not include a copy of the proposed amended

20   complaint.  As one commentator has noted:

21        A motion to amend under Rule 15(a), as it true of motions generally, is subject to the
     requirements of Rule 7(b), and must set forth with particularity the relief or order requested

22        and the grounds supporting the application.  In order to satisfy these prerequisites a copy of
     the amendment should be submitted with the motion so that the court and the adverse party

23        know the precise nature of the pleading changes being proposed.

24   6 Chas. A. Wright, et al., Federal Practice & Procedure § 1485 (2d ed 1990).  Similarly, the Ninth

25   Circuit has noted that a motion for leave to amend under Rule 15(a) must comply with Rule 7(b),

ORDER - 22

1   which requires that a motion state its grounds "with particularity." <u>Waters v. Weyerhaeuser Mortgage</u>

2   <u>Co.</u>, 582 F.2d 503, 507 (9th Cir. 1978). As a result, Plaintiff's original motion to amend was plainly

3   deficient.

4         After Defendant submitted its opposition to Plaintiff's motion to amend, Plaintiff submitted

5   what appears to be an "amended" motion to amend, as well as a proposed amended complaint.

6   However, the "amended" motion to amend did little to clarify the grounds for Plaintiff's motion,

7   adding the sentence "Plaintiff requests and seeks to amend claims and allegations in complaint, but

8   related and associated to original claims and allegations in complaint." <u>Id.</u> at 1. In addition, Rule

9   15(a) does not permit a party to "amend" a motion after it is filed. 6 <u>Federal Practice & Procedure</u> §

10   1475 ("motions are not 'pleadings' and the amendment of a motion will not be permitted" under Rule

11   15(a)). Although Plaintiff is pro se, "[p]ro se litigants must follow the same rules of procedure as

12   other litigants." <u>King v. Atiyeh</u>, 814 F.2d 565, 567 (9th Cir. 1987). As a result, the "amended"

13   motion may be properly stricken.

14         Putting aside these flaws, leave to amend a complaint may also be denied when amendments

15   would be futile. <u>Gabrielson v. Montgomery Ward & Co.</u>, 785 F.2d 762, 766 (9th Cir. 1986) Here,

16   Plaintiff's proposed amended complaint (Dkt. No. 32-3) includes a host of futile amendments.

17         First, Plaintiff seeks to add six individuals as defendants to this action, most if not all of whom

18   appear to be Shoreline employees. Putting aside the fact that the proposed amended complaint

19   includes virtually no specific allegations regarding the alleged conduct of each of these individuals, it is

20   well-established that "individual defendants cannot be held liable for damages under Title VII." <u>Miller</u>

21   <u>v. Maxwell's Int'l, Inc.</u>, 991 F.2d 583, 587 (9th Cir. 1993); <u>see also</u> <u>Holly D. v. Cal. Inst. of Tech.</u>,

22   339 F.3d 1158, 1179 (9th Cir. 2003) ("We have consistently held that Title VII does not provide a

23   cause of action for damages against supervisors or fellow employees."). As such, it would be futile to

24   permit Plaintiff to amend his complaint to allege Title VII claims for damages against the six additional

25   defendants named in his proposed amended complaint.

1        Plaintiff also alleges in the proposed amended complaint that he was "paid unequal and lesser

2   to female Caucasian instructor employed by defendant for continuing education non credit

3   department." (Dkt. No. 32-3 at 13).  However, Defendant specifically offered evidence in its opening

4   brief that the new female tai chi instructor hired by Shoreline agreed to teach her course for 40% of

5   gross revenues, compared to 60% for Plaintiff.  (Opening Brief at 8); see also id. at 6 (noting that

6   most instructors made only 50% of gross revenues).  Plaintiff has not pointed to evidence

7   contradicting Defendant's evidence.  As such, it would be futile to permit Plaintiff to amend his

8   complaint to allege that he was "paid unequal and lesser" than the new female tai chi instructor.

9        Plaintiff also appears to suggest in his proposed amended complaint that he was subjected to

10   harassment and differential treatment at Shoreline as a result of filing an EEOC complaint against a

11   different community college (North Seattle Community College) "in or about July/August 2004."[8]

12   Plaintiff alleges in his proposed amended complaint:

13        Plaintiff filed EEOC complaint regarding another state community college named North Seattle
         Community College regarding employment discrimination in compensation, treatment,
14        disciplinary actions, payment policies, and so forth in or about July/August 2004, thus two to
         three months later plaintiff is subject to racial and national origin harassment and differential
15        treatment unlike similarly situated employees who are non persons of color and who are
         Caucasians from another state college Shoreline Community College continuing education non
16        credit program.

17   (Dkt. No. 32-3 at 9); see also id. at 13 (alleging that "Plaintiff after filing complaint against another

18   state community college North Seattle Community College regarding employment discrimination,

19   plaintiff is harassed [at] another state community college Shoreline Community College.").  However,

20   as discussed earlier, Plaintiff has not offered sufficient evidence that he was subjected to racial

21   harassment or disparate treatment at Shoreline in the "two to three months" after "July/August 2004."

22

23   _____

24        [8]  At another point in his proposed amended complaint, Plaintiff states that he filed the EEOC
     complaint against North Seattle Community College in or about "July/August 2005."  (Dkt. No. 32-3
25   at 6).  Presumably, Plaintiff meant to say "2004," as he did later in the proposed amended complaint.

1   As such, Plaintiff's claim that he was subjected to harassment or differential treatment at the college

2   shortly after filing an EEOC complaint against another state community college would be futile.

3         Plaintiff also appears to allege in his proposed amended complaint that he was subjected to

4   discrimination or harassment based on the "Caucasians only" and "blacks only" signs that were

5   allegedly posted at the front doors of the college on Martin Luther King Day.  (Dkt. No. 32-3 at 3 and

6   7-8).  For the reasons previously discussed by the Court in Section A.6 above, a claim of

7   discrimination or harassment based on the posting of these signs on Martin Luther King Day would

8   also be futile.

9         Plaintiff also alleges in his proposed amended complaint that Defendant "never obtained any

10  Equal Employment Opportunity Commission signs in [the] workplace in violation [of] 42 U.S.C.

11  2000e-10 prior to Mr. Green['s] employment as instructor."  (Dkt. No. 32-3 at 12).  While 42 U.S.C.

12  § 2000e-10 requires employers to post information about filing complaints under Title VII, a private

13  individual does not have a right to file a lawsuit based on violations of this requirement.  See, e.g.,

14  Hudson v. Loretex Corp., 1997 WL 159282 at *7 (N.D.N.Y. Apr. 2, 1997) (holding that "no private

15  cause of action" exists to enforce the provisions of 42 U.S.C. § 2000e-10).  As such, any claims

16  regarding an alleged failure to post such notices would also be futile.

17        In short, even if the Court were to overlook the procedural flaws in Plaintiff's motion to

18  amend, the Court finds that Plaintiff's request for leave to amend his complaint should be denied

19  because the proposed amendments would be futile.

20                                    **Conclusion**

21        For the reasons stated above, the Court GRANTS Defendant's motion for summary judgment.

22  Plaintiff has not offered sufficient evidence to avoid summary judgment on his claims for retaliation,

23  disparate treatment, disparate impact, or harassment under Title VII of the Civil Rights Act of 1964.

24  Therefore, these claims will be dismissed with prejudice.  In addition, his state-law claims for breach of

25  contract and constructive discharge against Shoreline cannot be brought in federal court under the

ORDER - 25

1    Eleventh Amendment and are therefore subject to dismissal, without prejudice to refiling in a court of

2    competent jurisdiction.

3           The Court DENIES Plaintiff's motion for leave to amend his complaint.  Plaintiff's initial

4    motion failed to comply with the particularity requirements of Rule 7(b), and Plaintiff is not authorized

5    under Rule 15(a) to "amend" his motion to amend.  Apart from these flaws, the Court also denies

6    leave to amend because the amendments contained in Plaintiff's belatedly-submitted proposed

7    amended complaint would be futile.

8           The Clerk is directed to send copies of this order to Plaintiff and to all counsel of record.

9           Dated:   December 21, 2006

10

11                                                        s/Marsha J. Pechman
                                                          Marsha J. Pechman
12                                                        United States District Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

ORDER - 26